# 15-6280

## In the United States Court of Appeals for the Sixth Circuit

UNITED STATES OF AMERICA *EX REL.*
JAMES DOGHRAMJI, SHEREE COOK, AND RACHEL BRYANT,
*Relators-Appellees*,

*v.*

COMMUNITY HEALTH SYSTEMS, INC., *ET AL.*,
*Defendants-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

**REPLY BRIEF FOR APPELLANTS**

ROY T. ENGLERT, JR.
MICHAEL L. WALDMAN
LEE TURNER FRIEDMAN
JOSHUA A. MATZ*
*Robbins, Russell, Englert, Orseck,*
   *Untereiner & Sauber LLP*
1801 K Street, N.W.
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510

*Not admitted in D.C.; supervised
   by principals of the Firm.

*Counsel for Defendants-Appellants*
*Community Health Systems, Inc. et al.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

ARGUMENT .............................................................................................................1

I. SETTLED PRINCIPLES OF CONTRACT LAW REQUIRE CHSI'S INTERPRETATION OF THE AGREEMENT ................................................1

    A. CHSI's Interpretation of the Agreement is Unambiguously Correct ..............................................................................................1

    B. If the Agreement is Held to be Ambiguous, Extrinsic Evidence Requires CHSI's Interpretation ............................................6

    C. Doghramji's Equitable Arguments Are Irrelevant and Meritless ..........9

II. CHSI MAY RAISE FIRST-TO-FILE ARGUMENTS UNDER APPELLEE'S INTERPRETATION OF THE AGREEMENT ......................12

CONCLUSION ........................................................................................................14

CERTIFICATE OF COMPLIANCE ......................................................................14

CERTIFICATE OF SERVICE ................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dunn v. CFTC*, 519 U.S. 465 (1997) ..................................................................... 13

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
  314 U.S. 95 (1941) ................................................................................................ 4

*In re AmTrust Fin. Corp.*, 694 F.3d 741 (6th Cir. 2012) ........................................... 1

*Lockhart v. United States*,
  577 U.S. __ (March 1, 2016) (No. 14-8538) ........................................................ 2

*Public Citizen* v. *U.S. Department of Justice*,
  491 U.S. 440 (1989) ............................................................................................ 10

*United States ex rel. Fallon v. Accudyne Corp.*,
  967 F.3d 937 (7th Cir. 1996) ........................................................................ 13, 14

*United States ex rel. Poteet v. Medtronic, Inc.*,
  552 F.3d 503 (6th Cir. 2009) .............................................................................. 12

*Young v. Merrill Lynch & Co.*, 658 F.3d 436 (5th Cir. 2011) .................................. 9

**Statutes**

31 U.S.C. § 3730(c)(2)(B) ....................................................................................... 11

31 U.S.C. § 3730(d) .......................................................................................... *passim*

# ARGUMENT

Both sides agree: This case begins and ends with the text of the Agreement, which is construed like any other contract. If both sides are wrong, then it matters a great deal that, during settlement talks, a term that guaranteed the relators' entitlement to a reasonable fee award was deleted and replaced by Term 8, a sweeping reservation of CHSI's right to contest the relators' fee petitions on *any* ground. As shown by the plain text and extrinsic evidence, allowing CHSI to present its first-to-file and public-disclosure arguments is true to the parties' intent, and faithful to the full and fair bargain reflected in the Agreement.

## I. SETTLED PRINCIPLES OF CONTRACT LAW REQUIRE CHSI'S INTERPRETATION OF THE AGREEMENT

### A. CHSI's Interpretation of the Agreement is Unambiguously Correct

A contract's unambiguous meaning controls. *See In re AmTrust Fin. Corp.*, 694 F.3d 741, 749-50 (6th Cir. 2012). In its opening brief, CHSI demonstrated that Term 8, read alone and in the context of the Agreement as a whole, unambiguously permits CHSI to object on any ground to Doghramji's fee request. This conclusion is required by ordinary tools of contract interpretation:

- **Reservation of Rights**: It defies common sense and custom to conclude that CHSI waived arguments, not through an actual waiver, but rather through a reservation of rights that mentions waiver only to deny it.

- **Last-Antecedent Rule**: In Term 8, "pursuant to 31 U.S.C. § 3730(d)" is the limiting clause, and thus must be presumed to modify only the last antecedent—namely, "Relators' claims for attorneys' fees, expenses, and

costs." The last-antecedent rule shows that Term 8 describes what kind of request can be challenged, not what kinds of challenges can be raised.

- **Consistent Usage**: Throughout the Agreement, every time the relators' claim for fees is mentioned, it is described as one for "attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d)." Term 8 should not be read as the only term in the Agreement to vary from this rule.

- **Avoiding Inconsistency and Superfluity**: Doghramji renders Term 15(c)(1) inconsistent with Term 8 and renders Recital G superfluous.

- **Parallel Structure**: Just as entitlement to fees and to a relators' share of settlement proceeds is a single inquiry under § 3730(d), so do all relevant terms of the Agreement treat entitlement to fees and proceeds the same—both issues are reserved, in their entirety, for future resolution.

Faced with a battery of controlling interpretive principles, *any one of which* sinks his reading of the Agreement, Doghramji settles on a simple strategy: ignore them and hope they go away. He has literally nothing to say about the oddity of transforming a reservation of rights into a waiver, destroying consistent usage for just a single term, or creating inconsistencies and superfluities.

The last-antecedent rule, whose good sense the Supreme Court recently reaffirmed, *see Lockhart v. United States*, 577 U.S. __ (March 1, 2016) (No. 14-8538, slip op. 3-5), requires CHSI's interpretation. Yet Doghramji relegates his response to a footnote: Because no other FCA provision authorizes fee requests, he contends, it would make "no sense" to read "pursuant to 31 U.S.C. § 3730(d)" as identifying what kind of fee request can be challenged. Opp. 20 n.4. That response, however, collides with the rule of consistent usage. Whether or not it is

2

strictly necessary for the Agreement to cite § 3730(d) to identify the statutory basis for the relators' fee requests, it still does so—not only in Term 8, but also in Terms 3, 15(c)(1), and 18. There is no reason to think that Term 8 is the singular exception to that unvarying practice. Thus, Doghramji has no response to application of the last-antecedent rule, which, as a matter of ordinary English usage, requires CHSI's interpretation.

Dodging CHSI's arguments, Doghramji offers two of his own: one based on a comparison of Terms 7 and 8, and another based on the lack of a counter-recital to Recital G. *See* Opp. 20-23. Even if those arguments were good, they would come nowhere close to outweighing the interpretive principles that, as Doghramji tacitly concedes, support CHSI's reading of the Agreement. But they are not good arguments. They rise from mistaken premises and end with mistaken results.

Doghramji first insists that Term 8 must be given a constrained reading because it does not explicitly cite § 3730(b)(5) and § 3730(e)(4)—the provisions that create the first-to-file and public disclosure rules. That is in contrast, he adds, to the Government's reservation of rights in Term 7, which does cite two statutes. CHSI has already explained why this argument lacks merit. *See* CHSI Br. 38-41.

As Doghramji notes, Term 7 lists two statutes that the Government might rely on to contest a relator's claim for a share of the settlement proceeds. It introduces those two statutes, however, with the term "including," and then ends with a

sentence reserving *all* other objections under the FCA. If these parts of Term 7 are to be given meaning, the two listed statutes must be understood as mere *examples* of the contentions covered by the overarching reservation of rights. *See, e.g.*, *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941). Thus, Terms 7 and 8 are equally general: Both reserve any and all objections that might be made to the relators' requests for payment under § 3730(d).

    The only difference between Terms 7 and 8 is that Term 8 lacks exemplary statutes, and instead broadly reserves *all* arguments. Doghramji treats this detail as the key to the castle, insisting that Term 7 creates a rule of full disclosure and that any arguments not identified by statutory citation are not reserved. That is incorrect. By its plain terms, Term 7 itself reserves dozens of arguments, maybe hundreds, other than the two examples it lists. It is hard to see how a term so broad creates a rule so narrow. Moreover, the Agreement evinces no general demand that examples be listed in a reservation-of-rights term for that term to reserve the arguments covered by its plain language. In addition, it would have been awkward and impractical for CHSI to describe each of its bases for contesting the relators' fee claims—which is why it simply reserved *all* arguments. Most important, the fundamental structure of the Agreement shows similarity, not difference, in how Terms 7 and 8 treat the relators' claims under § 3730(d). CHSI Br. 42.

In sum, given the breadth of the overarching reservations of rights, the Government's choice to show two of its cards does not prove that CHSI folded by declining to tip its hand in the text of the Agreement. Indeed, Doghramji's view depends on two bizarre assumptions: *First*, CHSI's reservation of rights did waive its arguments, but did so indirectly, by failing to cite the statutory bases for those arguments in a contract term that otherwise would have preserved them. *Second*, CHSI knew that Term 8 would not reserve its arguments—despite its broad language—because the equally broad term preceding it listed two examples. Nobody writes contracts that way.

Doghramji's fallback argument is CHSI's "silence" in response to Recital G, in which "Relators and their counsel claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees, and costs." *See* Opp. 21-23. But Doghramji declines to address CHSI's dispositive responses: Recitals merit little weight in interpreting contract provisions; silence in response to recitals merits even less weight; CHSI was not "silent," but rather responded to Recital G in Terms 8 and 15(c)(1); the Government is also "silent" in response to Recital G but nobody would think it waived all objections; and Recital G is a mere "claim" of entitlement, not a statement of entitlement. CHSI Br. 42-43. Given these unanswered points, CHSI's asserted "silence" in response to Recital G offers Doghramji no comfort.

Almost as an aside, Doghramji, like the district court below, opines that CHSI could have more clearly reserved its right to raise first-to-file and public disclosure arguments. *See* Opp. ii. Maybe so. But terms are not given unnatural meanings that violate applicable canons of construction merely because, years later, lawyers believe they have come up with a better way to draft them. The question here—the *only* question—is what Term 8 means in the Agreement.

### B. If the Agreement is Held to be Ambiguous, Extrinsic Evidence Requires CHSI's Interpretation

At most, the power of CHSI's arguments and the weakness of Doghramji's render the Agreement ambiguous. In that event, resort to extrinsic evidence definitively resolves this appeal in CHSI's favor.

During settlement negotiations, this change was made to the Agreement:

> **Deletion**: "[CHSI] agrees to pay to Relators their reasonable expenses, attorneys' fees and costs"
>
> **Addition**: "All Parties agree that nothing in this [Agreement] shall be construed in any way to release, waive or otherwise affect the ability of [CHSI] to challenge or object to Relators' claims for attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d)."

Waldman Declaration, RE 164-2, Page ID #3813. Notably, this change was made at CHSI's behest, after it had bluntly informed the Government—the intermediary between CHSI and the relators—that it sought to preserve the right to object to the relators' fee claims.

6

Despite its plain text, Doghramji asserts that the new term was "substantially identical" to the deleted term, and that he therefore saw no reason to oppose it. *See* Opp. 26. Doghramji—who had filed his *qui tam* complaint seventh out of seven, had seen his allegations printed in the *New York Times* before filing them, and had studied first-to-file issues just one year earlier (in 2013)—insists that nothing about CHSI's change to the Agreement led him to think that CHSI might contest his entitlement to fees. The written record is overwhelmingly to the contrary, and neither Doghramji nor the district court has identified any evidence suggesting that Doghramji subjectively believed the opposite of what the record shows.

Doghramji's remaining responses to the extrinsic evidence similarly fall short. True, he was not copied on the various e-mails cited by CHSI in its opening brief. Opp. 27-28. Those e-mails, though, show what six parties to the Agreement—CHSI, the Government, and four relators—understood Term 8 to mean. They uniformly reveal a shared recognition that Term 8 raised a serious doubt about the relators' claimed entitlement to fees. *See* CHSI Br. 13-17. That is why Matthew Organ unsuccessfully requested that CHSI's new term be deleted and that the original term, which guaranteed a fee award, be restored. CHSI Br. 46.

Doghramji's assertion that none of the e-mails referenced the first-to-file rule is wrong. Michael Waldman's June 2014 e-mail to four of relators' lawyers stated:

7

> Our ability to work out an agreement on attorneys' fees also is hampered by your refusal to break out your fee request between Ms. Reuille and Mr. Plantz or *to identify which of your clients you believe is the first to file* . . . . [It] appears that you believe Mr. Plantz may be the first to file. *If that is the case, of course, then O'Connell Soifer [counsel to Ms. Reuille] would not be entitled to recover their attorneys' fees for work on the [National ED Claim]*.

Waldman Decl. at RE 164-3, Page ID #3849 (emphasis added). In this June 2014 email, CHSI plainly raises the issue of the first-to-file rule with relators. And while CHSI explicitly warned the relators of its first-to-file objections and added Term 8 to the Agreement (deleting a term that guaranteed a fee award), no e-mail from CHSI to the Government or the relators suggested any limitation on the scope of the objections that CHSI preserved in Term 8.

Every last piece of extrinsic evidence supports CHSI. For all of the quibbles in Doghramji's brief, he cannot identify one e-mail, memo, affidavit, draft contract term, or other document affirmatively demonstrating that he (or any other party) believed CHSI's reservation of rights had waived its right to challenge the relators' claimed entitlement to fees. He was given the chance to introduce such evidence and showed up with nothing. That is because there is nothing: In light of CHSI's candid e-mails, as well as its material and unsubtle changes to relevant terms of the Agreement, all parties understood Term 8 as an *unqualified* reservation of rights.

### C. Doghramji's Equitable Arguments Are Irrelevant and Meritless

Doghramji has no substantive response to CHSI's textual analysis proving that the Agreement allows it to raise first-to-file and public disclosure arguments. Nor can he draw support from the extrinsic evidence. So instead, he resorts to a case in equity: CHSI, he asserts, should not be allowed to litigate the basic issue of entitlement to attorneys' fees when surrendering such arguments was the whole point of the settlement.

Equitable concerns cannot trump the Agreement's unambiguous meaning. *See Young v. Merrill Lynch & Co.*, 658 F.3d 436, 448 (5th Cir. 2011). In any event, Doghramji's *cri de coeur* rings hollow. His claim that CHSI now seeks to upset the parties' compromise rests on two premises: (1) CHSI artfully concealed its intent to contest his entitlement to fees; and (2) CHSI's interpretation would transform the settlement into an extremely unfair bargain, in which the relators gave up a lot in exchange for very little. Neither premise is true.

Doghramji's brief is shot through with suggestions that he was blindsided by CHSI's first-to-file and public disclosure arguments. Opp. ii, 23-24, 26. The only noted basis for this surprise is that Term 8, unlike Term 7, does not cite the statutes creating those limits on fee recovery. As we have explained, the extrinsic evidence in this case provides ample reason to doubt that claim. Whereas Doghramji accuses CHSI of hiding "elephants in mouseholes," Opp. 24, CHSI told the Gov-

9

ernment all about the elephants, warned of the elephants in an e-mail to several relators, and altered operative provisions of the contract to account for the elephants. Term 8, moreover, is no mousehole: Doghramji could not reasonably have believed it wrought no change in meaning, especially since CHSI had loudly trumpeted its refusal to pay fees to seven different relators.

Even if Doghramji subjectively (but quite unreasonably) believed that the Agreement waived CHSI's right to contest his entitlement to fees, CHSI did not think so, as shown by numerous contemporary documents. Neither, at the time, did the Government or four other relators. *See* CHSI Br. 44-47. Thus, when Doghramji accuses CHSI of backtracking on the parties' deal—of wanting to "have its cake and eat it too," Opp. 39—he presumes an understanding of the deal that was not shared by most parties to it. At bottom, Doghramji's repeated invocation of the spirit of the parties' agreement just begs the question of what that agreement was. And on that point, the Agreement's plain text and the extrinsic evidence strongly favor CHSI, which bargained for Term 8 and should not be denied the benefit of its bargain. *Cf. Public Citizen* v. *U.S. Department of Justice*, 491 U.S. 440, 474 (1989) (Kennedy, J., concurring in judgment) ("[O]ffer[ing] a few observations on the difficulties of perceiving the true contours of a spirit").

Doghramji is right about one thing: This case arises from a compromise. Each party gave something up in exchange for certainty. CHSI gave up various

legal defenses (not to mention $88 million) in exchange for prompt and universal resolution of the merits of the National ED Claim.  The United States, in turn, gave up an opportunity to intervene and seek a larger recovery against CHSI in exchange for the certainty of an $88 million recovery.  And Doghramji gave up his seventh-filed *qui tam* suit in exchange for millions of dollars (since he knew at the time that the relators would divide among themselves the relators' share of the settlement proceeds).  That was a *very* good deal for Doghramji.

Just consider the two possible futures Doghramji confronted when the Agreement was finalized:

- **Compelled Settlement**: Doghramji could have broken from the pack and tried to proceed alone.  In that case, however, the Government was authorized to settle his claims with CHSI—even over his objections—so long as the settlement was fair, adequate, and reasonable.  *See* § 3730(c)(2)(B).

- **Dismissal**:  If the Government changed its mind or the court did not permit the settlement and allowed Doghramji to proceed with his *qui tam* suit, he would have faced the insuperable first-to-file and public-disclosure arguments that he is now so keen to avoid.  If he somehow got past those arguments, he would have faced an arduous journey on the merits.[1]

---

[1] Doghramji suggests that the Government might have pursued a larger financial recovery if it had known that CHSI intended to object to the relators' entitlement to fees.  *See* Opp. i.  That suggestion is foreclosed by the extrinsic evidence, which shows (as Doghramji nowhere denies) that the Government was well aware of CHSI's position on fees and shared CHSI's desire to push those ancillary questions to a later date in order to expedite a global settlement on the merits.  *See* CHSI Br. 15-16.  Doghramji also never explains why the United States might have reneged on a settlement with CHSI that netted the Government more than $88 million because of a concern about the fee recovery of the seventh-filing relator. In addition,

Thus, in signing the Agreement, Doghramji got a lot ($2.3 million) and gave up very little (compelled settlement or dismissal). The final bargain was fair, indeed, if not a downright windfall for Doghramji. CHSI's reading hardly renders the Agreement invalid for want of consideration. *Contra* Opp. 23 n.6.

As the price of reaching global peace on the merits on the National ED Claim, all parties sacrificed immediate resolution of ancillary issues. That is why the Agreement is littered with terms—like 3, 7, 8, 15, and 18—that defer some battles for another day. Under Term 8, one such battle is the relators' entitlement to fees. There is no unfairness in allowing CHSI to present its first-to-file and public disclosure arguments. To the contrary, both law and equity demand that result.

## II. CHSI MAY RAISE FIRST-TO-FILE ARGUMENTS UNDER APPELLEE'S INTERPRETATION OF THE AGREEMENT

Even under Doghramji's interpretation of Term 8, CHSI may contest his fee petition "pursuant to 31 U.S.C. § 3730(d)," which, in this case, authorizes fees only if the action was "brought by a person under subsection (b)." Subsection (b)(5) bars federal courts from exercising jurisdiction over any relator who cannot satisfy the first-to-file rule. *See United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009). Doghramji's case was not "brought by a person under

---

Doghramji alludes, vaguely, to other claims he might have pursued if the settlement talks had failed. *See* Opp. i. Given that his Complaint did not allege any claims *other* than the National ED Claim, one can only guess at what allegations he has in mind and how they could possibly be relevant.

subsection (b)" if he is barred from court by subsection (b). If Doghramji cannot satisfy the first-to-file rule, he has no right to fees.

Doghramji does not respond to the bulk of CHSI's analysis, which explained that the FCA's text, structure, and purpose support this conclusion. *See* CHSI Br. 48-51. His most basic error is textual. Doghramji would have this Court re-write "brought by a person under subsection (b)" as "brought by a person under subsection (b)(1)," thus excluding the rest of subsection (b). To justify that disfavored departure from the enacted text, he must prove that the natural reading would "yield patent absurdity." *Dunn v. CFTC*, 519 U.S. 465, 470 (1997). Yet Doghramji's arguments never surmount that high bar.[2]

This would be a very different case if it were like *United States ex rel. Fallon v. Accudyne Corp.*, 967 F.3d 937 (7th Cir. 1996), Doghramji's favored precedent. There, the defendant "agree[d] to pay Relators' reasonable expenses, attorneys' fees and costs in an amount and manner to be determined by the Court in accord with [§ 3730(d)]." *Id.* at 938. The defendant then turned around and argued that only nominal fees were "reasonable" because the relators' claims were meritless. *Id.* The court rightly rejected this effort to smuggle the merits into a post-settlement fee dispute where the defendant had expressly agreed to pay

---

[2] Doghramji's discussion of the appellate decisions cited by CHSI fails to distinguish their holdings from this case. Moreover, he cites no case for the claim that his atextual construction of the FCA is the proper reading of that statute.

attorneys' fees. *See id.* at 940. Here, in contrast, nowhere does CHSI agree to pay Doghramji's fees. Even as Doghramji reads it, the Agreement at least allows CHSI to object on *any* basis "pursuant to § 3730(d)." The language of the underlying contracts is what distinguishes this case from *Accudyne*; Doghramji's dragooning of that case to support his rewriting of the FCA is unsupportable.

## CONCLUSION

The judgment below should be reversed and the case remanded for further proceedings to resolve CHSI's objections to appellees' claimed entitlement to fees pursuant to § 3730(d).

Respectfully submitted,

/s/ Roy T. Englert, Jr.

ROY T. ENGLERT, JR.
MICHAEL L. WALDMAN
LEE TURNER FRIEDMAN
JOSHUA A. MATZ*
*Robbins, Russell, Englert, Orseck,
  Untereiner & Sauber LLP*
1801 K Street, N.W.
Washington, DC 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510

*Not admitted in D.C.; supervised
 by principals of the Firm.

*Counsel for Defendants-Appellants
Community Health Systems, Inc. et al.*

March 11, 2016

14

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because the brief contains 3,574 words, as determined by the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(b)(iii) and Sixth Circuit Rule 32(b)(1).

This brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) because it is written in 14-point Times New Roman font.

Dated: March 11, 2016

                                      /s/ Roy T. Englert, Jr.
                                      ROY T. ENGLERT, JR.
                                      *Robbins, Russell, Englert, Orseck,*
                                          *Untereiner & Sauber LLP*
                                      1801 K Street, N.W.
                                      Washington, DC 20006
                                      (202) 775-4500
                                      renglert@robbinsrussell.com

                                      *Counsel for Defendants-Appellants*
                                      *Community Health Systems, Inc. et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2016, I electronically filed the foregoing brief with the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. All participants in this case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

Dated: March 11, 2016

    /s/ Roy T. Englert, Jr.
ROY T. ENGLERT, JR.
*Robbins, Russell, Englert, Orseck,*
   *Untereiner & Sauber LLP*
1801 K Street, N.W.
Washington, DC 20006
(202) 775-4500
renglert@robbinsrussell.com

*Counsel for Defendants-Appellants*
*Community Health Systems, Inc. et al.*